# Blair, Appellant, *v.* Philadelphia Rapid Transit Company.

*Negligence—Street railways—Passenger—Getting on car—Contributory negligence.*

The relation between carrier and passenger can only be created by contract, express or implied. The general rule is that any person whom a common carrier has contracted, expressly or impliedly, to convey from one place to another, in consideration of the payment of fare, or its equivalent, and who, in the course of the performance of such contract, has been received by the carrier under its care, either upon the means of conveyance, or at the point of departure of that conveyance, is a passenger.

When a person enters a public conveyance, for example a street car at a place where such car regularly stops to receive and discharge pas-

sengers, he does so upon the invitation of the owner or operator of the car. If he desires to board such car at an unusual place and indicates his desire by an appropriate signal, and the signal be recognized and the car stopped or checked up to permit him to enter, the assent of the operator is again manifest and in either case the relation of carrier and passenger is created by the mutual acts of the parties; but where a car stops or slows down at an unusual place by reason of the exigencies of city traffic, and a person attempts to enter the car without the motorman or conductor knowing it, and in his effort to do so obtains an insecure foothold, and is thrown by the sudden start of the car, the railway company is not liable for his injuries, inasmuch as the person injured had not acquired the rights of a passenger.

Argued Dec. 10, 1907. Appeal, No. 1, Oct. T., 1907, by plaintiff, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1903, No. 3,607, for defendant non obstante veredicto in case of Charles J. Blair v. Philadelphia Rapid Transit Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before BARRATT, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $1,000. The court subsequently entered judgment for defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*S. G. Birnie*, with him *George Henderson*, for appellant, cited: Mallory v. Griffey, 85 Pa. 275; Bradwell v. Railway Co., 139 Pa. 404; Kingston Twp. v. Gibbons, 18 W. N. C. 334; Allen v. Warwick Twp., 9 Pa. Superior Ct. 507; Phillips v. Traction Co., 8 Pa. Superior Ct. 210; Walters v. Traction Co., 161 Pa. 36; Powelson v. United Traction Co., 204 Pa. 474; Boulfrois v. Traction Co., 210 Pa. 263.

*Thomas Leaming*, for appellee, cited: Bendon v. Union Traction Co., 26 Pa. Superior Ct. 539; Jennings v. Union Traction Co., 206 Pa. 31; Pitcher v. Street Ry. Co., 154 Pa. 560.

OPINION BY HEAD, J., July 15, 1908:

Just prior to the accident which injured the plaintiff he walked eastward along the south side of Race street, in the city of Philadelphia, to the southwest corner of Race and Ninth streets, intending to board a north bound car on Ninth street.

He was then sixty-nine years of age, but claims he was strong and active. He had been a sailor in his early days and, it is apparent from his testimony, relied with confidence on his ability to board even a moving car with safety. With a frankness that is somewhat unusual he says: "I never wanted a car to stop for me altogether. I thought I could get on a car better when it was running—it just gently swings you on."

He had traveled frequently on the Ninth street cars and admits he knew their regular stopping place, for the receipt and discharge of passengers was on the north side of Race street. When he reached the corner and looked south on Ninth street he saw a car the movement of which, towards its regular stopping place, had been impeded or checked by a dray or other vehicle. The car moved up slowly until its rear platform reached the crossing line of the south side of Race street when the plaintiff undertook to board it. Whether or not at that moment the car was moving or had come to a dead stop he will not say—and his evidence is all there is on that subject— the defendant offering no testimony whatever. The plaintiff succeeded in mounting the lower step of the car, was standing with one foot only on it and with the other raised to reach the platform, when the car either started or accelerated its speed and this movement was attended, as he says, with several violent jerks. He carried an umbrella in his left hand, and in mounting the step had, with that hand thus incumbered, taken such grasp as he could of the stanchion on that side. Of his right hand which was free and of the supporting rail on that side he made no use whatever. By the movement of the car in the manner described whilst the plaintiff was in the insecure position indicated, he lost his equilibrium and fell or was thrown to the street at practically the same point whence he started to board the car. There is no evidence whatever that the movement of the car caused even any inconvenience, much

less any injury to any passenger seated or standing in the car; nor that plaintiff signaled the car to stop or gave notice in any way of his intention to board it; nor that either conductor or motorman had any knowledge that he was attempting to enter the car when it moved. We have already seen it had not yet reached its regular stopping place where those in charge would be under obligation to look out for passengers either entering or leaving the car.

The entire case of the plaintiff rests on the proposition that he was a passenger on the car of the defendant and that it was guilty of a breach of the obligation a carrier assumes to discharge towards a person who is accepted as a passenger. When and how, under the facts of this case, was the relation of carrier and passenger created between the parties? It must be manifest that such relation could not be brought about solely by the acts or efforts of one party to establish it without the knowledge or assent, express or implied, of the other party. This must be true because such relation is at bottom contractual. "The relation between carrier and passenger can only be created by contract, express or implied. . . . The general rule is that any person whom a common carrier has contracted, expressly or impliedly, to convey from one place to another, in consideration of the payment of fare, or its equivalent, and who, in the course of the performance of such contract has been received by the carrier under its care, either upon the means of conveyance, or at the point of departure of that conveyance, is a passenger:" Moore on Carriers, 541–543.

"A more correct definition of the word (passenger) in its legal sense would be, one who travels in some public conveyance by virtue of a contract, express or implied, with the carrier, as the payment of fare or that which is accepted as an equivalent therefor. A mere trespasser, a person who steals a ride upon a train, or who is employed thereon, is not a passenger, etc.:" Penna. R. R. Co. v. Price, 96 Pa. 256.

When, therefore, a person enters a public conveyance, for example a street car, at a place where such car regularly stops to receive and discharge passengers, he does so upon the invitation of the owner or operator of the car. If he desires to board

such car at an unusual place and indicates his desire by an appropriate signal, and the signal be recognized and the car stopped or checked up to permit him to enter, the assent of the operator is again manifest and in either case the relation of carrier and passenger is created by the mutual acts of the parties. But in this case the stop or slow down of the car was enforced by the exigencies of city traffic; there was no invitation to the plaintiff to attempt to enter it; no knowledge on the part of the defendant or its servants that he had tried to do so and in his effort had obtained an insecure foothold on the rear step of the car. Under such circumstances we are unable to see any evidence in the record to support the conclusion that there was any breach of an obligation due from a carrier only to one who had acquired the rights of a passenger. In Pitcher v. People's Street Ry. Co., 154 Pa. 560, it was said: "The case then was that the car was about to start and the boy had not become a passenger, and had given no indication to the driver or conductor of his intent or desire to get on the car. How can it be, then, that the defendant neglected any duty which it owed to the boy in starting the car? If it was affirmatively proved that the driver or conductor saw him in the act of getting on, or if he had given them any kind of a signal or notice of his intent to get on, there would be room for an allegation of negligence in not giving him reasonable time to do so. But if they did not know of any such intent on his part, and there is no evidence that they or either of them ever saw him, what duty on their part was neglected? . . . . Assuredly the company was entitled to some kind of notice of his intent to assume the relation of passenger before being charged with the duty of taking care of him as a passenger." This doctrine was approved in a later case on the same facts—Pitcher v. Ry. Co., 174 Pa. 402—and, its application to the case at bar, must, in our judgment, be destructive of the plaintiff's claim to recover. The learned court below was therefore right in entering judgment for the defendant non obstante veredicto.

Judgment affirmed.